HENRY F. WALTERS AND ANNIE D. WALTERS

*vs.* ·

BALTIMORE AND OHIO RAILROAD,
A CORPORATION,

AND

THE MAYOR AND CITY COUNCIL OF BALTIMORE
CITY, A CORPORATION.      '

*Streets: change of grade; taking of property; damages; struct-
ure blocking up entrance to and from property; abut-
ting property owners. Joint tort feasors:
liability of—; agreements
between.*

In an action for trespass against the City of Baltimore, if the
act complained of was done by lawful authority, a plea of
*non cul* is sufficient, and under such a plea the city may offer
in evidence the ordinance under which the work was done.

p. 653

With the consent of the Legislature (Chapter 621, of the Acts of
1910), the City of Baltimore, in order to avoid the grade
crossings of several streets over the tracks of the B. & O.
R. R. Co., entered into an agreement with the latter by
which the city was to change the grade of one-half the width
of certain such streets and make the new grade rise by an
incline until it reached the height of some thirty-odd feet

above the grade. of the other half of the street and of the railroad tracks; the width of this incline and elevated street was 25 feet, and was built within a few inches of the building line of the houses on one side of the street; although the city changed the grade and ordered the work, the B. & O. R. R. Company performed the work and bore the expense of the construction; the effect of this structure was to effectually bar all ingress and egress of certain abutting property and to cut off all light and air for the houses; in an action for damages against the city and the railroad brought by some such abutting property owners, it was *held,* that such a change of grade and construction amounted to a taking of the property of the plaintiffs which the city could neither do, nor authorize, without paying just compensation therefor.  p. 657

The city and the railroad were both liable to the plaintiff as joint *tort feasors.*                              p. 657

And the plaintiffs are entitled to recover against either or both.
                                             p. 658

The fact that the city and the railroad had any understanding and agreement as between themselves for the liability for damages, does not concern the plaintiff.            p. 658

When the erection of a structure in a street cuts off the light and air and the ingress and egress to and from a building abutting on a public street, it is an act which not even a municipal corporation has the right to do, without due compensation, and amounts to a tort, for the commission of which the city is liable. It amounts to a taking of property, even though there has been no actual physical invasion.      p. 657

Whether a particular structure is consistent or inconsistent with the use of a street as a street must be largely a question of fact, depending upon the nature of the structure.    p. 654

An abutting property owner has the right to the street as a thoroughfare in common with others; and for any infringement of this right which he suffers in common with others he has no right of action, even though, by change of grade, etc., he is more or less inconvenienced.            p. 654

But abutting property owners have rights or easements in the public streets in addition to those of the public; they are entitled to the benefit of the street for ingress and egress, and can not be deprived thereof without compensation.     p. 657

*Decided May 8th, 1913.*

Appeal from the Baltimore City Court (HARLAN, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and CONSTABLE, JJ.

*Edward L. Ward* and *Edward M. Hammond,* for the appellants.

*S. S. Field* (with whom was *B. H. McKindless* on the brief), for the City of Baltimore, appellee.

*Duncan K. Brent,* (with whom was *W. Irvine Cross* on the brief), for the B. & O. R. R. Co., appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

In 1905 an ordinance was passed by the Mayor and City Council of Baltimore creating a commission to confer with representatives of the Baltimore and Ohio Railroad Company for the general purpose of abolishing numerous grade crossings of highways of the city in South Baltimore by the tracks of the Baltimore and Ohio Railroad. The object to be accomplished was one of mutual benefit to the public at large and to the Railroad Company. Numerous conferences appear to have been held between the members of this

Commission and persons representing the Railroad, and the results of these conferences were embodied in an ordinance of the Mayor and City Council of Baltimore No. 387, approved on the 16th day of August, 1909. The ordinance was usually long and dealt with a number of distinct subjects. The preamble recited that "It has become imperative that certain crossings at the grade of the Baltimore and Ohio Railroad in South Baltimore should be abolished and * * * in connection with the abolishing of said grade crossings the Baltimore and Ohio Railroad Company desires to make certain improvements to and re-locations of its lines of railroad in and near the City of Baltimore." The ordinance then proceeds to grant the consent of the Mayor and City Council to the construction of the lines of railroad so desired in accordance with the terms embodied in the ordinance, provided the obligations imposed upon the railroad company should be assented to by that Company, and the work executed in accordance with it. By section 2 Hamburg street, Lee street, Cross street and Stockholm street were named as being streets where bridges were to be constructed so as to carry the city traffic above the grade of the railroad tracks, all the cost of the work to be met as provided in the ordinance, and the physical work done under the supervision of and subject to the approval of the City Engineer. In section 7 parts of thirty-eight streets were named to be closed by the City to public traffic, which was, upon the completion of all the work, to be concentrated upon the four streets named in section 2, and carried on those streets above the grade of the railroad tracks. In section 3 detailed provision was made as to the construction of the bridge upon Hamburg street, which was to be constructed at the expense of the railroad company and to have an elevation at the point where the bridge proper began of 32.60 feet; later on in the same section it was provided that, "The approaches to said bridges shall be constructed upon a location to be fixed and provided by the City of Baltimore at its own cost, and said City shall make all changes in the established street

grades which may be necessary for the construction of said bridges and approaches and bear all expense of widening or changing any streets and acquiring any land, easements and rights necessary for the construction of said approaches." The cost of building these approaches and paving them was to be met by the Baltimore and Ohio Railroad, and after construction the City was required by the ordinance to maintain all the approaches to said bridges and the paving and side-walks upon said approaches. By section 3½ provision was made for what is said to be a change and re-establishment of grade of parts of Hamburg street, the intent of which was to make provision for a gradient approach to the bridge at the east building line of Howard street. It did not, however, propose to extend this gradient for the entire width of the street, or the entire width of the space between the curbs, but provided for its construction from a point thirty-seven feet north of the south building line of Hamburg street, thus leaving the northern part of the street, both side-walk and road-way, at the same level as it had theretofore existed, but the south portion of said street was to rise by an incline from the east curb line of Sharp street to an elevation of 32.60 feet at the east building line of Howard street. This approach was to have a road-way twenty-five feet in width, and a side-walk ten feet in width, thus bringing it almost in contact with buildings erected upon the building line on the south side of Hamburg street. The effect of such construction was, according to the amount of the elevation of the approach at any particular point, to seriously interfere with, or practically shut off, all access to buildings having a front on the south side of Hamburg street between Sharp and Howard streets. It inevitably also inflicted serious damage upon the light and air, certainly so far as the first floor was concerned, of all of such buildings, and accordingly there was inserted in the ordinance as section 18, the following:

"Section 18. *And be it further ordained,* That in order to provide absolutely and in all events for com-

pensation for the damages that will be sustained by the owners of property injuriously affected by the changes in grade herein provided for under section 3½, the Mayor and City Council of Baltimore hereby obligate itself to urge the Legislature of Maryland, at its next session in January, 1910, to pass an Act authorizing the Mayor and City Council of Baltimore to compensate said property owners for the damage actually sustained by them by reason of such changes in grade, and, conditioned upon the passage of such Act, the Mayor and City Council of Baltimore guarantee to each such owner compensation for the damages so sustained.".

In order to comply with the provisions of this section there was presented to and passed by the General Assembly of 1910, Chapter 621 (page 621), as follows:

Section 1. *Be It Enacted By The General Assembly Of Maryland,* That the Mayor and City Council of Baltimore be and it is hereby authorized and empowered to authorize and direct the Commissioners for Opening Streets, under such system of procedure, including reasonable notice to the property holders and the right of appeal by either the property holders or the Mayor and City Council of Baltimore to the Baltimore City Court and the Court of Appeals of Maryland, as it may prescribe, to ascertain and award to the owners of property in the City of Baltimore injuriously affected by the changes in grade provided for by section three and one-half of Ordinance No. 387 of the Mayor and City Council of Baltimore, approved August 16, 1909, and commonly known as the 'Grade Crossing Ordinance,' such damages, if any, as they may find to have been actually sustained by and directly caused to said property by reason of such changes in grade, and at the same time to assess against the same such benefits as they may find to have accrued to said owner by reason thereof; provided, however, that nothing in this Act contained shall be construed

as imposing any duty or obligation upon the Mayor
and City Council of Baltimore, except in the event
that said property holders are judicially declared to be
disentitled to recover such compensation or damages
from the B. & O. Railroad Company; and provided
further, that in the event of the exercise at any time
by the Mayor and City Council of Baltimore of the
authority hereby conferred, then nothing in this Act
contained shall be construed as depriving the Mayor
and City Council of Baltimore of any right it may
lawfully have to demand, enforce and receive reim-
bursement from the Baltimore and Ohio Railroad
Company to the full extent of any compensation it
may make, or damage it may pay, in the premises."

These preliminary legal steps having been taken, the
actual construction of the bridge and the necessary ap-
proaches was carried out in conformity therewith, with the
following result, so far as these plaintiffs were concerned.
Henry Walters and Annie D. Walters were the owners of a
lot on the south side of Hamburg street, at the corner of
Plum Alley, about mid-way between Sharp and Howard
streets. For the construction of the eastern approach in
front of their premises, a bow window which projected
slightly beyond the building line of the street was removed,
thus leaving a large opening in the front wall of their build-
ing; in front of the door-way and distant twelve inches from
it, was placed a large concrete pillar, one of the numerous
similar supports for the foot and roadway, and the footway
passed the front door and first floor windows, with an in-
tervening space of but three inches, between four and five
feet above the level of the first floor of the premises. The
relation of the abutment and the improvements of the plain-
tiff's lot will be best understood from the accompanying
diagram:

*Cross-section of old street level of part of Hamburg street, and section of house of Henry F. Walters, at corner of Hamburg street and Plum alley; and the elevated structure in the bed of Hamburg street authorized by the City of Baltimore and constructed by the B. & O. R. R. Co.*

The effect of this structure was to effectually bar all ingress to and egress from the premises, unless by means of a ladder from the second floor window to the newly constructed foot-way. The light and air was shut off from the first floor of the premises, thereby rendering that portion of the dwelling damp and uninhabitable. To recover for the damages thus inflicted the present suit has been brought by the owners against the Mayor and City Council of Baltimore and the Baltimore and Ohio Railroad Company. Both of the defendants admit the damage, but each insists that the other is liable.

At the trial of the case in the Baltimore City Court, the Court granted instructions directing a verdict for both of the defendants, upon the theory apparently that what had been done amounted, so far as the City was concerned, merely to a change of grade, and that a change of grade by a municipal corporation of one of its highways is *damnum absque injuria* for which it cannot be compelled to make compensation to an abutting owner; and that as to the defendant, the Baltimore and Ohio Railroad, the Act done was not only with the consent but by the authority of the municipal corporation, approved by the Legislature, and therefore, there had been no invasion of the plaintiffs' rights by the Railroad Company for which it was required to make compensation.

There are one or two minor questions of pleading raised by the Record, upon which it is not necessary to pass at this point, since they are all involved in the larger question raised by the granting of the prayers of the two defendants.

The first exception was to the admission by the trial court in evidence of the ordinance No. 387, approved August 16th, 1909, and which was offered in evidence by the Railroad Company. This ordinance had been set up by the pleas as a special defense, demurrers to which had been filed and sustained. The exact ground upon which they were so sustained does not appear from the Record.

It may have been because of the fact that the matters thus specially pleading amounted to the general issue. The suit was in the nature of an action of trespass for the damage caused by such trespass. If the act which was complained of was one done by lawful authority, then the party doing it had not committed a trespass, and the plea of *non cul* was amply sufficient, and the evidence so objected to was therefore admissible as tending to sustain the general issue plea which had been filed, and the ruling of the lower Court in admitting the ordinance in evidence was entirely correct.

The declaration as originally filed, alleged that the abutment or approach had been "erected and constructed upon and against the improvements and the lot of ground owned by the plaintiffs," that is that there had been an actual physical invasion of their property. Upon the conclusion of the evidence the declaration was amended by the striking out of this language.

By the second count of the amended declaration, however, it was alleged, "that the plaintiffs have been deprived of the use, enjoyment and possession of the said lot of ground and the improvements thereon, and deprived of the use and enjoyment of said Hamburg street and the south sidewalk thereof." That there has been any physical invasion of the land of the plaintiff in this case is not claimed.

The real question is, whether the structure erected and which is the occasion of this suit, is such an invasion of the rights of the plaintiff as to amount to a taking of their property within the meaning of the constitution, or whether the injury amounts merely to a consequential damage, for which there may or may not be a right of action. If it was the former, then the act was one which even the municipal corporation had no right to do without making due compensation, and amounted to a tort for the commission of which the city was liable to the plaintiffs for the damage inflicted on them whether the actual work was done by the city or by its authority. That is to say, if the invasion of the rights of the plaintiffs amounted to a taking; as regards these

plaintiffs both the city and the railroad company were tort feasors, and both liable for the injury done. If the city was liable, it could not invade its liability by delegating to another the doing of the tortious act. The ordinance by which the city gave the railroad company the right to build, apparently recognized this, when in section 18 it assumed an obligation on the part of the Mayor and City Council to urge the passage of an Act by the Legislature authorizing the Mayor and City Council to compensate abutting property owners for the damage sustained by them, and conditionally guaranteeing them such compensation. There is some apparent conflict in the authorities with regard to whether Acts such as are here complained of amount to an invasion or taking, or are merely in the nature of consequential damages. This is the result in part of special statutes in different states. No fairer statement can be made than that in the case of *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 146, where it is said that "while the Legislature may regulate the uses of a street as a street, it has no power to authorize a structure thereon which is subversive of and repugnant to the uses of the street as an open street. Whether a particular structure authorized by the legislature is consistent or inconsistent with the uses of the street as a street must be largely a question of fact depending upon the nature of the structure authorized."

This suggests as the first pertinent inquiry the question, what are the rights of an abutting owner in a street; primarily of course comes the right to its use as a thoroughfare in common with all others, and for any infringement upon this which he suffers in common with all other members of the community he has no right of action. *Lake Roland Co.* v. *Webster,* 81 Md. 535. And even when he suffers some additional inconvenience, as where there is a change of grade of the streets made by the municipal corporation, as a result of which he is more or less inconvenienced, he is still without any remedy as against the municipal corporation, damage of this character being regarded as *damnum abseque injuria.*

*Peddicord's case,* 34 Md. 463; *City & Suburban Ry.* v.
*Green,* 78 Md. 304.   It is upon this familiar principle that
the city claims exemption from liability in the present case,
and if there is nothing more than a change in the grade of
Hamburg street the position is sound.   But the owners of
lots abutting upon public streets have easements or rights
in the street which are valuable and are in addition to those
which they have with the general public.   This is recognized
in our statute law which confer upon the City of Baltimore
the power for laying out and closing up streets by providing
for compensation to such owners upon the closing of an
adjacent street.   So in *Van Witzen* v. *Gutman,* 79 Md. 405,
where an alley was attempted to be closed, thus taking from
other abutting owners their means of ingress to and egress
from their property through the alley to the public street,
it was held, that the right was a valuable one and could
not be taken for public use without compensation, and *a
fortiori* not for private use.   And in *Townsend, Grace &
Co.* v. *Epstein,* 93 Md. 537, the same rule was followed
where the interference was with regard to light and air.

In the case of *DeLauder* v. *Baltimore Co.,* 94 Md. 1, the
County Commissioners had reconstructed a county road, and
in so doing elevated it some five feet, at a point where a pri-
vate right of way of the plaintiff connected with the high-
way, and for the protection of passing traffic placed a guard
rail along the side of the reconstructed road.   After re-
viewing many of the prior decisions, including most of those
already referred to, Judge Pearce speaking for this court
said, "the injury inflicted upon Mrs. DeLauder is not the
rendering of the use of her right of way inconvenient or
expensive, but it is the destruction of its use, and its de-
struction is a taking in as just a sense as the appropriation
of a gravel bank for the repair of a public road would be a
taking."

And the same doctrine has been distinctly recognized in
numerous other cases, both in Maryland and elsewhere.
Thus in *Webb* v. *B. & O. R. R.* 114 Md. 216, it was said,

"the primary purpose of a street and the obligation of the municipal authorities is to preserve the beneficial enjoyment of the streets by the abutting land owners as a constitutent part of the public;" again in *Lake Roland Ry.* v. *Baltimore City,* 77 Md. 377, "the control of the city over streets is attended with the duty of preserving them for their legitimate purposes. The Mayor and City Council can not divest themselves of this trust." In the case of *Reining* v. *N. Y. L. & W. R. Co.,* 128 N. Y. 157, it was declared that owners of lots abutting on city streets were entitled to the benefit of the street for access and can not be deprived thereof without compensation. In this case a solid embankment had been built along a street in Buffalo and in consonance with the doctrine stated, it was said, "the public cannot justly demand such an appropriation of a street by a municipality in aid of a railroad enterprise." In *Vanderlip* v. *Grand Rapids,* 73 Mich. 522, a street was being regraded and raised about thirty feet, practically burying the dwelling of the plaintiff, and the city sought to evade liability for the damage caused by reason of its right to regrade. The work was being done by the city itself, but its Act was held to be a taking of the property, one which would be arrested by injunction until due compensation had been made. The rule was again emphasized in *Egerer* v. *N. Y. C. & H. R. R. Co.,* 14 L. R. A. 381, where it was held that an abutting owner cannot be deprived of the street affording him access to his premises, unless there is left for his use and enjoyment other suitable means of access, or just compensation is paid him for the deprivation of the same. In *Haynes* v. *Thomas,* 7 Ind. 43, and *Lackland* v. *N. Mo. R. Co.,* 31 Mo. 187 the principle is very concisely given that "the right of an abutting owner to the use of a street is as much property as the lot itself and the legislature has as little power to take away the one as the other."

In section 1325 of 3 *McQuillan on Municipal Corporations,* that author deals with the subject of the right of access to a street by an abutting owner, and says, "This right also

includes a certain convenience in the use of his property with respect to the rest of the world, such as the opportunity for a man's customers to come to his place of business without reasonable hindrance or interruption. This is held to be a proprietary right, an easement in the street attached to the ownership or estate of property abutting on a street or alley and property which can not be appropriated to the use of the public without compensation."

In view of the authorities to which reference has been made in part and the injury to the property of the plaintiffs being such as already indicated, it follows that the construction of the abutment or approach complained of in this case amounting to a taking of property of the plaintiffs which neither the Mayor and City Council could do or authorize to be done without making just compensation therefor to the owner; that so far as the present plaintiffs were concerned both defendants were joint tort feasors and, therefore, both liable to the plaintiffs, and the rulings of the Court below on the prayers withdrawing the case from the jury erroneous.

In the oral arguments, and the briefs of the defendants in this case, it was virtually conceded that the plaintiffs had been damaged, but the contention was that what had been done did not amount to a taking, as there had been no physical invasion of the plaintiffs' lot, and the damage which had been suffered was consequential in character. As already indicated this Court cannot agree with that view. But it was further urged that by reason of the ordinance, the liability was not a joint one, and that by its decision this Court should place the entire liability upon one or the other of the defendants, and absolve the other. This it is impossible to do in the present case for a number of reasons. The defendants were sued jointly, and the verdict as rendered was a joint verdict as to both defendants. If now, it was erroneous as to either it is necessary to reverse the entire judgment and remand the case. *Lumber Co.* v. *Israel Cong.* 100 Md. 689; *Richardson* v. *County Com'rs., Kent Co., ante,* page 153. As already pointed out, as to these plain-

tiffs both of the defendants were tort feasors, and therefore, these plaintiffs are entitled to recover against either or both. The plaintiffs were no parties to the ordinance, if it is to be regarded in the light of a contract, and can not therefore be limited in their right of recovery to only one of the two joint tort feasors. What may be the respective liabilities of the city and the railroad company *inter sese,* resulting from any undertakings or agreements between them is a matter in which these plaintiffs have no concern, and which it is not necessary now to decide.

This is not a case as arose in *Gardiner* v. *Boston & Worcester R. Co.,* 63 Mass. 1, where the railroad alone was sued, there having been an agreement made between the Company and the City of Boston for the raising of Tremont street to avoid a grade crossing, and the railroad was held to be primarily liable for damages occasioned thereby. In the present case both the City and the Company are parties defendants, both are liable to the plaintiffs, whatever may be their respective liability as to each other, as the result of the passage of the ordinance and the subsequent Act of the Legislature.

> *Judgment reversed and case remanded for a new trial; costs to be paid by the appellees.*