479 A.2d 921

John Gilbert WIDGEON

v.

EASTERN SHORE HOSPITAL CENTER et al.

Misc. No. 5, Sept. Term, 1983.

Court of Appeals of Maryland.

Aug. 21, 1984.

Peter Ayers Wimbrow, III, Ocean City, for appellant.

Andrew Lapayowker, Baltimore (Donald L. DeVries, Jr., Daniel J. Moore and Semmes, Bowen & Semmes, Baltimore, on the brief), for appellee Ronald M. Smeets, M.D.

Judith K. Sykes, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., and Daniel J. O'Brien, Asst. Atty. Gen., Baltimore, on the brief), for appellees Eastern Shore Hosp. Center, Charles R. Buck, Jr., H.M. English, M.D., and E.D. DeLamater, M.D., other appellees.

Argued Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

In this case we are asked to decide whether a private action for damages exists for violations of Articles 24 and 26 of the Maryland Declaration of Rights. The question was certified to us by the United States District Court for the District of Maryland, pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974, 1984 Repl. Vol.), §§ 12–601 through 12–609 of the Courts and Judicial Proceedings Article.[1] In response to the certified

---

1. That Act provides in part:
    "§ 12–601. Jurisdiction granted to Court of Appeals.
    "The Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or the highest appellate court or the intermediate appellate court of any other state when requested by the certifying court if there is involved in any proceeding before the certifying court a question of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this State."
    The Order of Certification, dated January 7, 1983, posed the following question to this Court:

question, we hold that Maryland recognizes a common law action for damages for violations of the state constitutional rights enumerated above.

## I.

The question arose in the United States District Court pursuant to the following allegations, which are taken from the "Statement of Facts" contained in the Order of Certification and the plaintiff's second amended complaint. The plaintiff, John Gilbert Widgeon, was involuntarily admitted to the Eastern Shore Hospital Center on April 17, 1980.[2] He was placed in the facility pursuant to a Petition for Emergency Admission filed in the District Court of Maryland, sitting in Worcester County, by his then wife, Joanna Marie Curty Widgeon.[3] In accordance with Code (1982, 1983 Cum.Supp.), § 10–622 of the Health-General Article, Widgeon's wife appeared before the Maryland District Court in an *ex parte* hearing and testified that Widgeon exhibited abnormal and violent behavior. After considering her testimony, which Widgeon alleges was wholly fabricated, the state court found Widgeon to be a danger to himself and others, and ordered him taken into custody and transferred to the Eastern Shore Hospital Center. Upon arrival at the hospital, Widgeon was examined by Drs. E.D. Delamater and Ronald M. Smeets. Although Widgeon did not show any outward signs of mental disorder, the doctors

---

"Does the law of Maryland provide an action for damages for violation of enumerated articles of the Declaration of Rights of the Constitution of Maryland, *viz.*, Articles 24 and 26?"

The United States District Court's Order further provided:

"That the phrasing of the Certified Question is not intended to restrict consideration by the Court of Appeals of Maryland of the problems involved in this litigation and the issues perceived by that Court in light of the pleadings in this case."

2. The Eastern Shore Hospital Center is a state facility, Code (1982), § 10–406(a) of the Health-General Article.

3. Some time after the filing of the petition, Widgeon's wife remarried and took the surname Brueckman. Her name appears in the complaint as Joanna Marie Curty Widgeon Brueckman.

nonetheless ordered that he be held at the hospital based on his wife's testimony. According to Widgeon, his detention was part of a scheme to enable his wife to live with her boyfriend; he maintains that once she and her boyfriend arrived together in Florida, he was released immediately from the hospital.

Widgeon instituted this action in the United States District Court for the District of Maryland under 42 U.S.C. § 1983.[4] In addition to the § 1983 cause of action, Widgeon alleged violations of Articles 24 and 26 of the Maryland Declaration of Rights,[5] negligence, false imprisonment, false arrest, defamation, intentional infliction of emotional distress, and conspiracy to commit these wrongs. Widgeon sought compensatory and/or punitive damages on all counts.

In his first amended complaint Widgeon named as defendants his ex-wife Brueckman, Drs. Delameter and Smeets,

---

4. This section, which authorizes a civil damage action against state officials for violation of federal constitutional rights, provides:

"§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

5. Article 24 of the Maryland Declaration of Rights provides:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Article 26 provides:

"That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

Eastern Shore Hospital Center and its superintendent, Dr. H.M. English. Motions to dismiss were filed by Dr. Smeets and the Eastern Shore Hospital Center, and motions for summary judgment were filed by Drs. English and Delameter. By their respective motions to dismiss and for summary judgment, Drs. Smeets and Delameter specifically objected to those counts alleging violations of Articles 24 and 26 of the Maryland Declaration of Rights. It was their contention that the law of Maryland does not recognize a cause of action for violation of specific articles of the Maryland Declaration of Rights. This issue, along with others raised by the defendants' motions, were considered at a pretrial hearing held before a United States Magistrate.[6]

The magistrate made several recommendations to the United States District Court, including the recommendation that the court certify to the Court of Appeals of Maryland the question of whether Maryland law recognizes an action for damages for violations of Articles 24 and 26 of the Declaration of Rights. The federal district court accepted the magistrate's certification recommendation and, as previously pointed out, certified that question to this Court by order of January 7, 1983. The plaintiff was designated as the appellant. Further proceedings in the case were stayed pending our resolution of the certified question.

## II.

■ By Article 5 of the Maryland Declaration of Rights, all "Inhabitants of Maryland are entitled to the Common Law of England ... and to the benefit of such of the English statutes as existed on the Fourth day of July, Seventeen hundred and seventy-six ...." Under the common law of England, where individual rights, such as those now protected by Article 26, were preserved by a funda-

---

**6.** Subsequent to this hearing, Widgeon filed a second amended complaint which named as an additional defendant, Dr. Charles R. Buck, Jr., the Secretary of the Department of Health and Mental Hygiene. Dr. Buck filed a motion for summary judgment, which apparently has not been ruled upon.

mental document (*e.g.*, the Magna Carta), a violation of those rights generally could be remedied by a traditional action for damages. The violation of the constitutional right was viewed as a trespass,. giving rise to a trespass action.

One of the earliest cases to illustrate this point was *Wilkes v. Wood*, Lofft's 1, 98 Eng.Rep. 489 (1763). In *Wilkes, supra*, the plaintiff recovered damages in a trespass action brought against an official in the office of the Secretary of State who entered his home and seized his papers upon an unlawful general warrant. Lord Pratt, in his instructions to the jury, acknowledged that the official had acted *"contrary* to the *fundamental principles* of the *constitution,"* *id.* at 19,[7] and stated that the jury could consider the illegal conduct in assessing damages.

In *Huckle v. Money*, 2 Wils. 205, 95 Eng.Rep. 768 (1763), the plaintiff was awarded exemplary damages after the King's messengers placed him in custody based on an unlawful general warrant. In upholding the jury's damage award, Lord Pratt noted that the Secretary of State, who granted the unlawful warrant, had acted in violation of the Magna Carta and that, therefore, such damages were proper. He stated (2 Wils. at 206–207):

> "[T]he personal injury done to ... [the plaintiff] was very small, so that if the jury had been confined by their oath to consider the mere personal injury only, perhaps 20*l.* damages would have been thought damages sufficient; but the small injury done to the plaintiff, or the inconsiderableness of his station and rank in life did not appear to the jury in that striking light, in which the great point of law touching the liberty of the subject appeared to them at the trial; they saw a magistrate over all the King's subjects, exercising arbitrary power, violating *Magna Charta,* and attempting to destroy the liberty of the kingdom, by insisting upon the legality of this general

---

7. The italics in Lord Pratt's jury instructions appear in the case as published in Lofft's Reports.

warrant before them; they heard the King's counsel, and saw the solicitor of the treasury, endeavouring to support and maintain the legality of the warrant in a tyrannical and severe manner; these are the ideas which struck the jury on the trial, and I think they have done right in giving exemplary damages; to enter a man's house by virtue of a nameless warrant, in order to procure evidence, is worse than the *Spanish* inquisition; a law under which no *Englishman* would wish to live an hour; it was a most daring publick attack made upon the liberty of a subject: I thought that the 29th chapter of *Magna Charta* ... which is pointed against arbitrary power, was violated. I cannot say what damages I should have given if I had been upon the jury; but I directed and told them they were not bound to any certain damages ...."

Again, in *Entick v. Carrington*, 19 How.St.Tr. 1029 (1765),[8] the plaintiff brought a trespass action against the King's messengers for unjustifiably entering his house and seizing his books and papers, and the jury awarded damages to the plaintiff. Lord Camden, after a lengthy historical review, upheld the damage award on the ground that the warrant to seize the papers was "illegal and void" (19 How.St.Tr. at 1074).

More than a century later, in *Boyd v. United States*, 116 U.S. 616, 626–630, 6 S.Ct. 524, 530–532, 29 L.Ed. 746 (1886), the United States Supreme Court cited with approval Lord Camden's judgment in *Entick v. Carrington, supra.* The Court in *Boyd* reviewed the origins of the Fourth Amendment's prohibition against unreasonable searches and seizures, and concluded that Entick's trespass action was in essence an action to remedy the government's unconstitutional invasion of his liberty and security. After quoting

---

**8.** *Entick v. Carrington, supra,* is also reported at 2 Wils. 275, 95 Eng.Rep. 807 (1765). The case as taken from Wilson's Reports includes only a short note of the court's judgment, while the account reported in Howell's State Trials includes the original judgment of the court as delivered by Lord Camden from written notes. 19 How. St.Tr. at 1029–1030.

from *Entick v. Carrington, supra,* the Court explained (116 U.S. at 630, 6 S.Ct. at 532):

"The principles laid down in this opinion [*Entick v. Carrington*] affect the very essence of constitutional liberty and security. They reach further than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life. *It is not the breaking of his doors, and rummaging of drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense,*—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment" (emphasis added).

Maryland courts have long recognized these principles. Both *Entick v. Carrington, supra,* and *Boyd v. United States, supra,* were expressly approved by this Court in *Blum v. State,* 94 Md. 375, 384–385, 51 A. 26 (1902). Moreover, in *Meisinger v. State,* 155 Md. 195, 141 A. 536 (1928), in which this Court rejected the argument that evidence obtained by unlawful searches and seizures under Article 26 of the Declaration of Rights should generally be excluded from criminal trials, both the majority opinion and the dissenting opinion recognized the alternate availability of a civil action for damages. 155 Md. at 199, 207. *See Commonwealth v. Tibbetts,* 157 Mass. 519, 32 N.E. 910 (1893), and *People v. Defore,* 242 N.Y. 13, 150 N.E. 585, *cert. denied,* 270 U.S. 657, 46 S.Ct. 353, 70 L.Ed. 784 (1926), relied on by the majority in *Meisinger. See also Lawrence v. State,* 103 Md. 17, 36, 63 A. 96 (1906).

Legal scholars also have long taken the position that an unlawful search and seizure gives rise to a damage action against both the officer executing an illegal warrant and the official causing it to issue. Fraenkel, in an authorita-

tive article on the subject, explained the early English cases beginning with *Wilkes v. Wood, supra,* as follows:

"All the actions brought ... were in trespass against the officers who executed the warrants and the officials who caused them to be issued. It is this remedy which has always been the direct means for the redress of such wrongs."

Fraenkel, *Concerning Searches and Seizures,* 34 Harv. L. Rev. 361, 363–364 (1921). *See* Cornelius, *Search & Seizure* §§ 480, 484 (2d ed. 1930); H.D. Evans, *Maryland Practice—A Treatise on the Course of Proceeding in the Common Law Courts of the State of Maryland* 61–62 (1867); 2 *Sutherland on Damages* § 412 (4th ed. 1916); 8 *Wigmore on Evidence* § 2183 (McNaughten rev. 1961).

Furthermore, in other contexts, this Court has expressly held that conduct violative of state constitutional rights can be redressed through private legal action.[9] In 1860, this Court ruled that an injunction would issue to prevent the Western Maryland Rail Road Company from making use of private property without first compensating the landowner, as required under what is today Art. III, § 40 of the Maryland Constitution.[10] *Western Md. Rail Road Co. v.*

---

**9.** The defendants conceded this point, both in their briefs and at oral argument. But they qualified the concession by insisting that, while equitable remedies were available in an appropriate case, money damages were not. In light of the cases discussed *infra,* we find this distinction to be unwarranted.

**10.** Maryland Constitution, Art. III, § 40, provides as follows:
"The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation." In 1860 this provision appeared, in almost identical form, as Art. III, § 46.
The Maryland legislature authorized the railroad in this case to take and use private property, pursuant to the act incorporating the railroad, Ch. 304 of the Acts of 1852. When first incorporated the railroad was named the Baltimore, Carroll and Frederick Railroad Company; by Ch. 37 of the Acts of 1853 the railroad was renamed the Western Maryland Rail Road Company.

*Owings,* 15 Md. 199, 74 Am.Dec. 563 (1860). *See Walker v. Acting Director,* 284 Md. 357, 363, 396 A.2d 262 (1979), and cases cited therein. In *Weyler v. Gibson,* 110 Md. 636, 73 A. 261 (1909), this Court further held that an action in ejectment could be maintained against a state official who wrongfully made use of the plaintiff's property in violation of Article III, § 40.

An action for damages also has been held to be an appropriate vehicle to remedy a violation of Maryland's constitutional prohibition against the taking of private property without just compensation. In *Walters v. B. & O. R. R.,* 120 Md. 644, 88 A. 47 (1913), the Court concluded that, since the plaintiffs were denied the use and enjoyment of their property, and since the deprivation amounted to a "taking" within the scope of Art. III, § 40, the plaintiffs were entitled to recover damages for the injuries done to them. The Court stated (120 Md. at 653–654, 88 A. 47):

> "The real question is, whether the structure erected and which is the occasion of this suit, is such an invasion of the rights of the plaintiffs as to amount to a taking of their property within the meaning of the constitution, or whether the injury amounts merely to a consequential damage, for which there may or may not be a right of action. If it was the former, then the act was one which even the municipal corporation had no right to do without making due compensation, and amounted to a tort for the commission of which the city was liable to the plaintiffs for the damage inflicted on them whether the actual work was done by the city or by its authority. That is to say, if the invasion of the rights of the plaintiffs amounted to a taking; as regards these plaintiffs both the city and the railroad company were tortfeasors, and both liable for the injury done."

*See Sanderson v. Baltimore City,* 135 Md. 509, 522–523, 109 A. 425 (1920); *City of Baltimore v. Merryman,* 86 Md.

584, 591–592, 39 A. 98 (1898).[11]   And more recently, in *PSC v. Highfield Water Co.*, 293 Md. 1, 441 A.2d 1031 (1982), we explained that Art. III, § 40, gave rise to an implied contract between the government and a private landowner, and that, therefore, only when the government "took" private property for public use in a constitutional sense, would a promise to compensate be implied.   293 Md. at 13, 16–17, 441 A.2d 1031.   *See also United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789 (1947).

Moreover, the General Assembly of Maryland long ago recognized that one whose rights under certain provisions of the Maryland Constitution were violated was entitled to bring an action at law.   By Ch. 73 of the Acts of 1861, Special Session, the Legislature amended the existing general statute of limitations, Art. 57, § 1, to include a clause providing for a three-year limitation period for "all actions for ... violation of the twenty-first, twenty-third, twenty-eighth and twenty-ninth articles of the Declaration of Rights ...."[12]   For more than a century, this clause re-

---

**11.**   In other cases this Court has acknowledged that the plaintiff was not entitled to recover damages because the challenged government action did not amount to a "constitutional taking."   *See Arnold v. Prince George's Co.*, 270 Md. 285, 294–296, 311 A.2d 223 (1973); *Langley v. Roads Commission*, 213 Md. 230, 236–237, 131 A.2d 690 (1957); *Smith v. Balto. & Ohio R. Co.*, 168 Md. 89, 92–93, 176 A. 642 (1935).

**12.**   Art. 57, § 1, as amended in 1861, provided as follows:
"SEC. 1.   All actions of account, actions of assumpsit, or on the case, actions of debt on simple contract, or for rent in arrear, detinue or replevin, all actions for trespass, for injuries to real or personal property, all actions for illegal arrest, false imprisonment, or violation of the twenty-first, twenty-third, twenty-eighth and twenty-ninth articles of the Declaration of Rights, or any of them; or of the existing, or any future provisions of the code touching the writ of habeas corpus, or proceeding thereunder, shall be commenced within three years from the time the cause of action accrued; and all actions on the case for words, and actions of assault, battery and wounding, or any of them, within one year from the time the cause of action accrued; this section not to apply to such accounts as concern the trade or merchandise between merchant and merchants, their factors and servants which are not residents within this state."

mained a part of the general limitations statute, with only minor changes to reflect a renumbering of the provisions of the Declaration of Rights.[13]

██ In addition, because Articles 24 and 26 of the Maryland Declaration of Rights, which are at issue here, have consistently been held to be "in pari materia" with or "equated with" the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Supreme Court decisions with regard to those amendments are particularly persuasive. *See, e.g., Comm'n On Med. Discipline v. Stillman,* 291 Md. 390, 414 n. 9, 435 A.2d 747 (1981); *Gahan v. State,* 290 Md. 310, 319–322, 430 A.2d 49 (1981); *Attorney General v. Waldron,* 289 Md. 683, 704–705, 426 A.2d 929 (1981); *Board v. Goodsell,* 284 Md. 279, 293 n. 7, 396 A.2d 1033 (1979); *Barry Properties v. Fick Bros.,* 277 Md. 15, 22, 353 A.2d 222 (1976); *Givner v. State,* 210 Md. 484, 492–493, 498, 124 A.2d 764 (1956). The United States Supreme Court, as well as numerous other federal courts have held that violations of those constitutional provisions give rise to private damage actions. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amend-

---

**13.** Article 21 of the Declaration of Rights, referred to in the 1861 version of Art. 57, § 1, was repealed and re-enacted as Article 23; by Ch. 681 of the Acts of 1977, Article 23 was re-enacted as our current Article 24. In addition, Article 23 of the Declaration of Rights, referred to in the 1861 statute, was re-enacted as Article 26 and appears that way today. *See McIver v. Russell,* 264 F.Supp. 22, 28 n. 10, 30 n. 16 (D.Md. 1967). With the re-codification of the code provisions relating to the judiciary in 1974, the enumeration of specific types of actions was deleted from the limitations provision and replaced by a general three-year limitation for all actions, subject to specified exceptions. The new provision, § 5–101 of the Courts and Judicial Proceedings Article, provides as follows:

"A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

The Revisor's Note, which appears only in the 1974 volume of that article, indicates that the change in the provision was not intended to do away with any viable causes of action, but was designed to simplify the limitations statute by abandoning the lengthy "laundry list" of actions subject to the three-year limitation.

ment equal protection right gives rise to damage action); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (damage action appropriate to remedy government conduct in violation of Fourth Amendment); *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933) (Fifth Amendment right that government render just compensation enforceable by damage action); *Loe v. Armistead*, 582 F.2d 1291, 1294–1295 (4th Cir. 1978), *cert. denied*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980); *Meiners v. Moriarity*, 563 F.2d 343, 348 (7th Cir. 1977); *J.D. Pflaumer v. United States Dept. of Justice*, 450 F.Supp. 1125, 1131 (E.D.Pa.1978). *See* Annot., 64 L.Ed.2d 872 (1981). *See also Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In the leading case of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra,* the Court held that an unconstitutional search and seizure under the federal constitution gave rise to a legal action for damages. Reiterating the declaration in *Marbury v. Madison*, 1 Cranch 137, 163, 2 L.Ed. 60 (1803), that " '[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury,' " the Court concluded that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." 403 U.S. at 395–397, 91 S.Ct. at 2004–2005. *See Butz v. Economou*, 438 U.S. 478, 485–486, 98 S.Ct. 2894, 2899–2900, 57 L.Ed.2d 895 (1978).[14]

---

**14.** Although the Supreme Court has extended the *Bivens* rationale to other constitutional provisions, the Court also has recognized two instances where private damage actions might be precluded. In cases where "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective," or where in the absence of affirmative action by Congress "special factors" nevertheless require "hesitation," it may be appropriate to deny damage relief. *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–1472, 64 L.Ed.2d 15 (1980). *See, e.g., Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

Moreover, many state courts have recognized that an individual may redress a state or federal constitutional deprivation by instituting a damage action. *See, e.g., Bull v. Armstrong,* 254 Ala. 390, 48 So.2d 467, 470 (1950); *Gay Law Students Ass'n v. Pacific Tel & Tel,* 24 Cal.3d 458, 156 Cal.Rptr. 14, 24, 595 P.2d 592, 602 (1979); *Walinski v. Morrison & Morrison,* 60 Ill.App.3d 616, 18 Ill.Dec. 89, 91–92, 377 N.E.2d 242, 244–245 (1978); *Newell v. Elgin,* 34 Ill.App.3d 719, 340 N.E.2d 344, 349 (1976); *Mayes v. Till,* 266 So.2d 578, 580 (Miss.1972); *Lloyd v. Stone Harbor,* 179 N.J.Super. 496, 432 A.2d 572, 578 (1981); *Strauss v. State,* 131 N.J.Super. 571, 330 A.2d 646, 649 (1974); *Terranova v. State,* 111 Misc.2d 1089, 445 N.Y.S.2d 965, 969 (1982); *State v. Lindway,* 131 Ohio St. 166, 2 N.E.2d 490, *cert. denied* and *appeal dismissed,* 299 U.S. 506, 57 S.Ct. 36, 81 L.Ed. 375 (1936).

### III.

The defendants offer essentially two arguments to support their position that an action for damages should not be cognizable for violations of Articles 24 and 26 of the Maryland Declaration of Rights. First, they contend that because other remedies may be available ·to Widgeon, we should not recognize a damages action based on alleged violations of these constitutional provisions. Second, relying on cases in which this Court has refused to imply a private damages action from certain statutory provisions, the defendants urge that we must similarly deny Widgeon's state constitutional claim for damages. Finally, the defendants argue that even if we recognize an action for damages for violations of Articles 24 and 26 of the Maryland Constitution, the claims in this case against the hospital and state defendants in their official capacities would nevertheless be barred by the State's sovereign immunity under the Eleventh Amendment.

### (a)

The defendants take the position that, because Widgeon has available to him remedies under non-constitu-

tional state tort law and 42 U.S.C. § 1983, it is inappropriate for us to recognize a remedy for violation of state constitutional rights. It is a well-settled rule, however, that where a particular set of facts gives rise to alternative causes of action, they may be brought together in one declaration, and where several remedies are requested, an election is not required prior to final judgment. *See Nationwide Mutual Ins. v. Webb*, 291 Md. 721, 742, 436 A.2d 465 (1981); *Surratts Assoc. v. Prince Geo.'s Co.*, 286 Md. 555, 568, 408 A.2d 1323 (1979); *Sommers v. Wilson Bldg. & L. Ass'n*, 270 Md. 397, 400–401, 311 A.2d 776 (1973); *Kirchner v. Allied Contractors*, 213 Md. 31, 36, 131 A.2d 251 (1957); *Miller v. Howard*, 206 Md. 148, 158, 110 A.2d 683 (1955). Additionally, under some circumstances, a state constitutional provision may recognize and preserve an interest that is wholly unprotected under state common law and statutes. *See PSC v. Highfield Water Co.*, 293 Md. 1, 16–20, 441 A.2d 1031 (1982). *See also* Art. 46 of the Maryland Declaration of Rights. Thus, the existence of other available remedies, or a lack thereof, is not a persuasive basis for resolution of the issue before us.

## (b)

The defendants also contend that, because on several occasions this Court has failed to imply a private right of action for damages from a state statute, we should likewise reject Widgeon's claims based on alleged violations of Articles 24 and 26 of the Declaration of Rights. This argument is flawed in two respects.

First, the defendants erroneously assume that, in order to allow Widgeon to seek damages for a deprivation of a state constitutional right, it is necessary to imply a new cause of action or remedy from the constitutional provision. To the contrary, there is no need to imply a new right of action because, under the common law, there already exists an action for damages to remedy violations of constitutional rights. In addition, the cases that the defendants cite in support of their contention are inapposite. *See Murphy v.*

*Baltimore Gas & Elec.*, 290 Md. 186, 428 A.2d 459 (1981), and *Austin v. Buettner*, 211 Md. 61, 124 A.2d 793 (1956). It has long been held that where a statute establishes an individual right, imposes a corresponding duty on the government, and fails to provide an express statutory remedy, a traditional common law action will ordinarily lie. *See, e.g., George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co.*, 59 Md. 255, 260–261 (1883); *Co. Comms. v. Duckett*, 20 Md. 468, 478 (1864). *See also Apostol v. Anne Arundel County*, 288 Md. 667, 672, 421 A.2d 582 (1980); *Baltimore County v. Xerox Corp.*, 286 Md. 220, 227–228, 406 A.2d 917 (1979); *White v. Prince George's Co.*, 282 Md. 641, 653, 654 n. 7, 387 A.2d 260 (1978). The cases relied on by the defendants, however, involved statutes which were not intended to create specific individual rights. Rather, the local safety ordinances at issue in the *Murphy* and *Austin* cases were designed only to confer a general benefit on the public at large, and, therefore, the Court found it inappropriate to sanction a direct private action thereunder. By contrast, Articles 24 and 26 of the Declaration of Rights were intended to preserve individual liberty and property interests. *See Goldman v. Crowther*, 147 Md. 282, 306–307, 128 A. 50 (1925).

(c)

■ The defendants assert that, even if this Court holds that an action for damages may be brought to remedy violations of Articles 24 and 26 of the Declaration of Rights, the Eastern Shore Hospital Center and individual state defendants are immune under the Eleventh Amendment to the United States Constitution.[15] Under the Uniform Certification of Questions of Law Act, § 12–601, we are only authorized to answer "a question of law of *this State* which may be determinative of the cause then pending in the

---

15. For a recent discussion of state sovereign immunity under the Eleventh Amendment, *see Pennhurst State School & Hosp. v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

certifying court . . . ." (emphasis added). The defendants' Eleventh Amendment argument attacks the *jurisdiction* of the federal court under the United States Constitution. *See Pennhurst State School & Hosp. v. Halderman,* — U.S. ——, 104 S.Ct. 900, 917–919, 79 L.Ed.2d 67 (1984). Since the argument is essentially one of federal court jurisdiction and federal constitutional law, it is beyond the scope of our authority under the Uniform Certification of Questions of Law Act.

A question concerning a federal court's exercise of jurisdiction under federal law might involve a state law component which could be the subject of a certified question. No such state law issue, however, has been certified to us in this case or raised. Instead, the defendants' argument is a challenge to the basic jurisdiction of a United States District Court, under the federal constitution, to entertain an action filed in that court. A state supreme court, acting under the Certification of Questions of Law Act, is not the appropriate forum for such argument.[16]

## IV.

■ In conclusion, we do not suggest that a violation of every state constitutional right gives rise to a common law action for damages. The certified question is limited to Articles 24 and 26 of the Declaration of Rights. Thus, we hold only that where an individual is deprived of his liberty or property interests in violation of Articles 24 and 26, he

---

**16.** Similarly, the defendants also contend that this case "was not properly before the United States District Court" and that the federal court lacked "jurisdiction" because of the plaintiff's failure to submit his claim to arbitration pursuant to the Maryland Health Care Malpractice Claims Act, Code (1974, 1984 Repl. Vol.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article. *See Davidson v. Sinai Hospital of Baltimore,* 462 F.Supp. 778 (D.Md. 1978), *aff'd* 617 F.2d 361 (4th Cir. 1980). On this ground, the defendants urge that we decline to answer the certified question. Regardless of the merits of the defendant's argument based upon the Health Care Malpractice Claims Act, the argument furnishes no proper ground for our refusal to answer the state law question certified to us.

may enforce those rights by bringing a common law action for damages.[17] Accordingly, we answer the certified question in the affirmative.

QUESTION ANSWERED AS HEREIN SET FORTH. COSTS IN THIS COURT TO BE PAID BY APPELLEES.

---

**17.** As previously indicated, in addition to the counts of his complaint setting forth what we regard to be common law actions for alleged violations of Articles 24 and 26 of the Declaration of Rights, the plaintiff's complaint contained counts alleging the more conventional wrongs of false arrest and false imprisonment, defamation, intentional infliction of emotional distress, and negligence. We intimate no opinion concerning what differences, if any, might exist between the damages recoverable under the counts asserting violations of the Declaration of Rights and the damages recoverable under the counts asserting the more conventional wrongs.

In addition, we intimate no opinion concerning the effect of the Maryland Health Care Malpractice Claims Act or of the doctrine of sovereign immunity upon an action such as the instant one if it had been brought in a state court.