PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

DENISE PATTERSON,
          *Defendant-Appellant.*

No. 00-4872

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-00-31)

Argued: November 2, 2001

Decided: January 22, 2002

Before WIDENER, WILKINS, and TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Judge Traxler wrote the opinion, in which Judge Widener and Judge Wilkins joined.

---

## COUNSEL

**ARGUED:** Michael Morchower, MORCHOWER, LUXTON & WHALEY, Richmond, Virginia, for Appellant. John Staige Davis, V, Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Richmond, Virginia, for Appellee.

**OPINION**

TRAXLER, Circuit Judge:

Denise Patterson pled guilty to violating 18 U.S.C.A. § 922(g)(3) (West 2000) by possessing a firearm while using marijuana, but she reserved the right to appeal the district court's order denying her motion to suppress the firearm. We affirm, albeit for a different reason than that given by the district court.

I.

In the summer of 1997, the federal Drug Enforcement Administration ("DEA") began investigating the possibility of a narcotics conspiracy in Richmond, Virginia involving, among others, Denise Patterson. From mid-1999 to the beginning of 2000, agents conducted surveillance of Patterson's residence at 2502 Haden Avenue ("the Patterson property") "[p]robably in excess of thirty times." J.A. 74.

Located in a residential neighborhood, Haden Avenue is a paved street which has neither sidewalks nor curbs. As a consequence, the yards of the houses along the street extend for the most part all the way to the edge of the street. The occupants of the Patterson residence utilized the area between their front steps and the street as a parking pad, which they joined to their driveway to create a reverse "L" for cars at their house. Both the parking area and the driveway were gravel, with each appearing to be a seamless part of the other.

While conducting surveillance of the Patterson property, DEA agents observed that the gravel area abutting Haden Avenue in front of the residence on the Patterson property was routinely used for parking by Patterson and her guests, and by no one else. The agents repeatedly observed a Toyota RAV vehicle, which they later learned was owned by Patterson, parked there. The agents also repeatedly observed several other vehicles parked in the gravel area, but were able to connect each of them to different Patterson acquaintances. At no time did the agents observe a vehicle belonging to anyone other than Patterson or one of her guests parked in the gravel area.

The DEA later obtained a valid search warrant authorizing the search of "the property or premises known as . . . 2502 Haden Avenue, Richmond, Virginia." J.A. 34. When agents arrived to execute the warrant, the Toyota RAV vehicle belonging to Patterson was again parked in the gravel area. After inspecting the house, the agents searched Patterson's Toyota, believing that the gravel area in front of the house was on the premises of 2502 Haden Avenue and thus within the scope of the search warrant. Agents discovered a firearm in the vehicle, and Patterson was subsequently charged with being an unlawful user of marijuana in possession of a firearm.

Prior to trial, the Patterson property was surveyed at the request of defense counsel. It was determined that the gravel area in front of Patterson's residence where the Toyota was parked was not, in fact, part of the same property. Rather, the gravel area was discovered to be a part of the city-owned property adjacent to the Haden Avenue roadway. Because the warrant did not identify the property as that of the city and did not refer to any vehicles parked on city property, defense counsel moved to suppress the firearm discovered in Patterson's vehicle as the fruit of an unlawful search. The district court viewed the issue as dependent on the legal concept of curtilage. *See Oliver v. United States*, 466 U.S. 170, 180 (1984) ("[C]urtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes.") (citation and internal quotation marks omitted); *see also United States v. Stanley*, 597 F.2d 866, 869-70 (4th Cir. 1979) (noting that a search warrant for a home includes that home's curtilage). The district court concluded that the gravel parking pad was not part of the "curtilage-in-fact," but upon finding the area in question to be part of the "curtilage-in-law," it determined the search was proper.

II.

In this case, we need not address the curtilage issue. Rather, because the record adequately establishes the objective reasonableness of the agents' interpretation of the scope of the warrant, we affirm on the basis of the Supreme Court's decision in *Maryland v. Garrison*, 480 U.S. 79 (1987). *See Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999) (noting that in conducting our review of the dis-

trict court's ruling, we may affirm the court's order on "any ground supported by the record even if it is not the basis relied upon by the district court").

In *Garrison*, police officers obtained and executed a warrant to search Lawrence McWebb and "the premises known as 2036 Park Avenue third floor apartment." *Garrison*, 480 U.S. at 80. At the time the police applied for the warrant and at the time they conducted the search pursuant to the warrant, they believed, based on a reasonable investigation that included checking utility company records, that McWebb's was the only apartment on the third floor. It turned out that the third floor was divided into two apartments, one occupied by McWebb and the other by Harold Garrison. When officers entered the vestibule of the third floor to execute the search warrant, the doors off the hallway were open. Thus, at the time police began the search, there was nothing to indicate that there was more than one apartment on the third floor. Accordingly, officers searched Garrison's apartment, believing it to be part of McWebb's apartment. Upon realizing their mistake, the officers ceased the search of Garrison's apartment, but by that time they had already found contraband in the apartment. The contraband subsequently provided the basis for Garrison's conviction on state narcotics charges. *See id.* at 80-82.

On appeal, the Supreme Court declined to rule that the search of Garrison's apartment and the seizure of contraband there violated the Fourth Amendment. *See id.* at 88-89. In doing so, the Court reconfirmed "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of . . . executing search warrants," *id.* at 87, so long as "the mistakes [are] those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Id.* at n.11 (internal quotation marks omitted). "[S]ufficient probability, not certainty," the Court observed, "is the touchstone of reasonableness under the Fourth Amendment." *Id.* at 87 (internal quotation marks omitted). Concluding that the question of whether the search of Garrison's apartment was constitutional "depend[ed] on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable," *id.* at 88, the Court found that the officers' conduct passed muster because "[t]he objective facts available to the officers . . . suggested no distinction between McWebb's apartment and the third-floor premises."

*Garrison*, 480 U.S. at 88. The Court observed that "[p]rior to the officers' discovery of the factual mistake, they perceived McWebb's apartment and the third-floor premises as one and the same; therefore their execution of the warrant reasonably included the entire third floor." *Id.* Thus, the Court held that "the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched," *id.*, and that their conduct did not offend the Fourth Amendment. *See id.* at 88-89.

Like the Supreme Court in *Garrison*, we have little trouble concluding that the DEA agents investigating the Patterson property held an objectively reasonable belief that the gravel area in front of that property was part of the premises encompassed within their warrant. "The objective facts available to the [agents] . . . suggested no distinction between" the Patterson property and the gravel area between the house and the road. *Id.* at 88. Given the agents' observations during surveillance, and the absence of any indication to the contrary, their belief that the gravel parking area was part of the Patterson property was objectively reasonable. And because the agents mistakenly perceived the Patterson property and the gravel parking area in front of that property as one and the same, "their execution of the warrant reasonably included" the gravel parking pad. *Id.*

The only way the agents could have known that the gravel parking pad was actually titled in the city would have been to have had the land surveyed, but the Fourth Amendment does not require the officers to take such measures as a matter of course. *Cf. Garrison*, 480 U.S. at n.14 (refusing to require police to conduct a preliminary survey of the premises in order to determine the precise scope of the warrant so long as police are otherwise able to obtain "a reasonably detailed warrant"). Again, the touchstone of the Fourth Amendment inquiry is "sufficient probability, not certainty." *Id.* at 87 (internal quotation marks omitted). The agents in this case "act[ed] on facts leading sensibly to their conclusion[ ]" that there was a sufficient probability that the gravel parking pad was part of the premises at 2502 Haden Avenue. *Id.* at n.11 (internal quotation marks omitted). Moreover, "the [agents'] conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched," *id.* at 88, and thus their search did not violate the Fourth Amendment.

Finally, the fact that the Toyota RAV vehicle was not itself listed in the search warrant does not require exclusion of the firearm from evidence. Where a warrant authorizes the search of an entire property or premises, the scope of the warrant includes automobiles on the property or premises that are owned by or are under the dominion and control of the premises owner or which reasonably appear to be so controlled. *See United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990). The Toyota RAV was owned by Patterson, the owner of the subject premises, and agents had an objectively reasonable belief that the vehicle was parked on the Patterson property. Thus, Patterson's vehicle was within the scope of the search warrant, and the search of the vehicle did not violate the Fourth Amendment.

### III.

In sum, because the agents' belief that the gravel parking area was part of the Patterson property was an objectively reasonable one, their interpretation of the scope of the warrant to include Patterson's vehicle, which was parked there, was also objectively reasonable. Because the agents' conduct was at all times objectively reasonable, we affirm the district court's order denying Patterson's motion to suppress the firearm that was discovered in her vehicle.

*AFFIRMED*